| | |
|---|---|
| Arapahoe County District Court<br>7325 South Potomac St.<br>Centennial, CO 80112 | DATE FILED: May 16, 2022 10:10 AM<br>FILING ID: CB590B65AD807<br>CASE NUMBER: 2022CV30873 |
| Plaintiff: Chad Sanford<br><br>v.<br><br>Defendant: Employers Mutual Casualty Company dba EMC Insurance | ▲COURT USE ONLY▲ |
| Counsel for the Plaintiff<br>Dylan C. Unger, Reg. No. 50099<br>Franklin D. Azar & Associates, P.C.<br>14426 East Aurora Avenue<br>Denver, CO 80014<br>Telephone: 303-757-3300<br>Facsimile: 303-757-3206<br>E-Mail: ungerd@fdazar.com; | Case No.<br><br>Division: |
| **COMPLAINT** | |

Plaintiff, Chad Sanford, by and through his attorneys, Franklin D. Azar and Associates, P.C., for his Complaint against the Defendant, states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Chad Sanford is an individual and resident of the State of Colorado.

2. Defendant Employers Mutual Casualty Company dba EMC Insurance (hereinafter "EMC Insurance") is a company with a registered agent in and that regularly conducts business activities in the State of Colorado.

3. Defendant EMC Insurance's registered agent is located at 5445 DTC Parkway, Suite 320, Greenwood Village, CO 80111, in Arapahoe County.

4. Venue is proper in this action pursuant to C.R.C.P. 98 (c).

## GENERAL ALLEGATIONS

5. Mr. Sanford was involved in a motor vehicle collision which occurred on February 10, 2020, at approximately 5:50 a.m. (hereinafter "the collision")

6. Mr. Sanford was driving a 2017 Ford Pickup.

7. Mr. Sanford was traveling northwest in the Number 1 lane on East Alameda Parkway.

8. A vehicle driven by Jamie Whitmire was facing northeast on East Kentucky Avenue and made a left turn to head westbound on East Alameda parkway in front of Mr. Sanford.

9. The front right quarter panel of Mr. Sanford's vehicle struck Ms. Whitmire's vehicle.

10. Ms. Whitmire took Mr. Sanford's right of way prior to the collision.

11. Ms. Whitmire was at fault for causing the collision.

12. The Aurora Police Department responded to the collision.

13. The Aurora Police Department did not cite Mr. Sanford for causing the collision.

14. Mr. Sanford incurred injuries, losses, and damages as a result of the collision.

15. Mr. Sanford's injuries, losses, and damages were caused by Ms. Whitmire' negligence.

16. Mr. Sanford has not failed to mitigate his damages.

17. At the time of the collision, Ms. Whitmire had a policy of insurance with Progressive Insurance with policy limits of $25,000 per person per collision.

18. At the time of the collision, Ms. Whitmire was underinsured with respect to Mr. Sanford's injuries.

19. Mr. Sanford settled with Ms. Whitmire for her policy limits of $25,000.

20. Defendant EMC Insurance gave Mr. Sanford permission to settle with Ms. Whitmire.

21. At the time of the collision, Mr. Sanford's vehicle was insured with Defendant EMC Insurance with underinsured motorist bodily injury limits of $1,000,000 per person per incident.

22. As the driver of the vehicle insured with Defendant EMC, Mr. Sanford was covered by Defendant EMC Insurance's policy.

23. Mr. Sanford notified Defendant EMC Insurance of his intention to pursue an underinsured motorist claim.

24. Defendant EMC Insurance did not dispute that Mr. Sanford was injured in the crash.

25. Mr. Sanford provided medical records and bills related to the collision to Defendant EMC

Insurance.

26. By July 8, 2021, Mr. Sanford had sent Defendant EMC Insurance more than $48,000 in medical expenses and corresponding records asked that EMC Insurance tender the benefits owed at the time.

27. On or about July 8, 2021, Mr. Sanford submitted additional medical bills and records and prior medical records to Defendant EMC Insurance to assist it in evaluating his claim.

28. By July 8, 2021, Defendant EMC Insurance was aware that Mr. Sanford had undergone a cervical discectomy, decompression, and reconstruction with total disc arthroplasty surgery.

29. On or about July 14, 2021, Defendant EMC Insurance issues an underinsured motorist benefits payment of $10,666.76 as a *Fisher* payment for medical bills.

30. Defendant EMC Insurance did not issue any payment for non-economic damages.

31. By July 25, 2021, Mr. Sanford had sent Defendant EMC Insurance more than $210,000 in medical expenses and corresponding records asked that EMC Insurance tender the benefits owed at the time.

32. By August 17, 2021, Defendant EMC Insurance had not requested that Mr. Sanford provide any prior medical records.

33. By August 17, 2021, Defendant EMC Insurance had not requested that Mr. Sanford provide any signed authorizations to allow it to order medical bills and records itself.

34. On or about August 18, 2021, Elaine K Stafford of Lambdin & Chaney, LLP sent Mr. Sanford a letter explaining that the firm had been retained to represent EMC with regard to Mr. Sanford's claims for UIM benefits.

35. Elaine K Stafford and Lambdin & Chaney assisted Defendant EMC in adjusting Mr. Sanford's claim.

36. On August 18. 2021, Ms. Stafford requested that Mr. Sanford return a signed medical authorization and participate in two medical examinations with doctors she chose prior to any further UIM evaluation being completed.

37. On August 19, 2021, Mr. Sanford returned the signed medical authorization.

38. Mr. Sanford completed a medical examination with Dr. Jannsen on September 16, 2021.

39. Mr. Sanford completed a medical examination with Dr. Failinger on September 23, 2021.

40. Defendant EMC Insurance issued a *Fisher* payment for Mr. Sanford's medical bills for his injuries other than his shoulder.

41. Defendant EMC Insurance issued a *Fisher* payment for Mr. Sanford's non-economic damages for injuries other than his shoulder in the amount of $150,000.

42. Based solely on Dr. Failinger's examination, Defendant EMC Insurance denied paying any benefits for Mr. Sanford's shoulder injury.

43. In February 2022 Mr. Sanford provided additional medical records and bills to Defendant EMC Insurance for evaluation.

44. Defendant EMC Insurance in March 2022, Mr. Sanford provided additional medical records and bills to Defendant EMC Insurance for evaluation.

45. The additional medial records and bills provided in 2022 included records of treatment to Mr. Sanford's shoulder, including records showing he underwent surgery.

46. Defendant EMC Insurance did not send the additional provided records to Dr. Failinger for review.

47. Defendant EMC Insurance did not contact Mr. Sanford's surgeon to request his opinion on causation.

48. Defendant EMC Insurance has not paid any benefits for Mr. Sanford's shoulder injury.

49. Defendant EMC Insurance has not requested to speak to Mr. Sanford about his injuries.

50. Defendant EMC Insurance has not requested to speak to Mr. Sanford's treating doctors about his injuries.

51. Defendant EMC Insurance has not requested to speak to Mr. Sanford's doctors who saw him before the collision about his injuries.

52. Defendant EMC Insurance has not paid any benefits for impairment to Mr. Sanford.

53. Defendant EMC Insurance has not paid any benefits for future medical treatment to Mr. Sanford.

54. Defendant EMC Insurance knows that Mr. Sanford is a plumber.

55. Defendant EMC Insurance knows that Mr. Sanford is 47 years old.

56. Defendant EMC Insurance knows that people who undergo cervical surgery like Mr. Sanford's are likely to suffer from adjacent segment disease.

57. Defendant EMC Insurance knows that a man in his 40s who does physical work and has had the type of surgery that Mr. Sanford had is more likely to suffer from adjacent segment disease.

58. Defendant EMC Insurance did not conduct a reasonable investigation as to the need for future surgery.

59. Defendant EMC Insurance failed to appropriately investigate Mr. Sanford's claim.

60. Defendant EMC Insurance failed to timely pay benefits owed to Mr. Sanford.

61. Defendant EMC Insurance failed to consider Mr. Sanford's full damages without a

reasonable basis.

62. Defendant EMC Insurance' conduct resulted in unreasonable delay of payment of benefits owed.

63. Defendant EMC Insurance failed to provide a reasonable explanation to Mr. Sanford for the compromise offer of settlement.

64. Defendant EMC Insurance has acted in bad faith.

65. Defendant EMC Insurance's failure to pay the full value of the claim results in EMC Insurance retaining the money and earning interest on it.

66. EMC Insurance has favored its own financial interests over the interests of its insured.

67. EMC Insurance has not documented any failure to cooperate in its claim file.

68. EMC Insurance' conduct seeks to delay and deny payment to insured to its own benefit of retaining money and earning interest on it.

## I. FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

69. Mr. Sanford incorporates all prior allegations as though fully set forth herein.

70. Sometime prior to the collision, Howard Disposal Services, LLC entered into a contract with Defendant EMC Insurance for the purpose of obtaining automobile insurance, which policy includes coverage for claims involving underinsured motorists. As the driver of a vehicle covered under that policy, Mr. Sanford was a beneficiary of this contract and entitled to the full policy benefits of Defendant EMC Insurance's policy.

71. Defendant EMC Insurance had a duty to perform in a manner set forth in the policy.

72. Defendant EMC Insurance breached its duty to perform under the policy as more fully described above.

73. At all times pertinent to the within action, all the premiums as required under the contract for insurance were timely paid to Defendant EMC Insurance.

74. Mr. Sanford has fulfilled all of his obligations under the policy issued by Defendant EMC Insurance.

75. Mr. Sanford has fully cooperated with Defendant EMC Insurance with regard to his claim for benefits.

76. Mr. Sanford is an intended beneficiary of Defendant EMC Insurance's insurance policy/contract and is therefore entitled to enforce its terms.

77. Mr. Sanford is entitled to be compensated by Defendant EMC Insurance for all damages he has incurred, including pain, suffering, loss of enjoyment of life, loss of earnings and earning capacity, permanency and/or impairment, and disability under the underinsured motorist coverage of the policy.

## II.  SECOND CLAIM FOR RELIEF
### (FIRST PARTY STATUTORY CLAIM UNDER C.R.S. § 10-3-1116)

31. Mr. Sanford incorporates all prior allegations as though fully set forth herein.

32. Defendant EMC Insurance has denied and delayed payment of underinsured motorist benefits to Mr. Sanford without a reasonable basis for its action.

33. Defendant EMC Insurance failed to consider all available information leading to the delay in the payment of benefits owed to its insured.

34. In accordance with C.R.S. § 10-3-1116, Mr. Sanford is entitled to recover from Defendant Defendant EMC Insurance two times the covered underinsured motorist benefits, plus reasonable attorney's fees and court costs.

## THIRD CLAIM FOR RELIEF
### (BAD FAITH)

34. Mr. Sanford incorporates all prior allegations as though fully set forth herein.

35. Defendant EMC Insurance owed Mr. Sanford a duty to act in good faith in investigating, reviewing, adjusting, and settling his terms.

36. Defendant EMC Insurance breached its duties to its insured, and acted in bad faith, through its conduct as described above and by engaging in the following, among other acts:

   a. Compelling Mr. Sanford to institute litigation to recover amounts due to his under the underinsured motorist bodily injury liability benefits afforded Mr. Sanford under the insurance policy;
   b. Favoring the interests of Defendant EMC Insurance, an insurer, over those of Mr. Sanford, an insured, by retaining monies owed to Mr. Sanford and earning interest on these monies;
   c. Failing or delaying payment of reasonable compensation for the injuries, damages, and losses Mr. Sanford suffered at the hands of an underinsured motorist;
   d. Failing to consult appropriate medical experts before making a medical determination;

Appendix A-2

  e. Failing to consider all available information;
  f. Incompetently evaluating Mr. Sanford's claim; and,
  g. Failing to provide reasonable explanation regarding its position to its insured.

37. Defendant EMC Insurance's actions are unreasonable.

38. Defendant EMC Insurance knew its conduct was unreasonable or disregarded the fact that its conduct was unreasonable.

39. As a direct result of Defendant's breaches of its duties to its insured, Mr. Sanford has been damaged including, but not necessarily limited to:

 a. Being forced to incur additional costs in litigation;
 b. Enduring the emotional trauma of being unnecessarily involved in a lawsuit with defendant; and,
 c. Being deprived of the use of funds that would otherwise be used for such things as medical treatment which should have been paid by now.

  WHEREFORE, Mr. Sanford prays for judgment against Defendant for all general damages, economic damages, all statutory and necessary costs including, but not limited to, expert witness fees and the expenses incurred in investigation and discovery required to present Mr. Sanford's claims, attorney fees and interest from the time of the occurrence, post-judgment interest at the requisite rate, and for such other and further relief as this Court shall deem proper, just, and appropriate under the circumstances.

**THE PLAINTIFF RESPECFULLY REQUESTS TRIAL BY JURY, ON ALL ISSUES SO TRIABLE.**

Respectfully submitted: May 16, 2022

            FRANKLIN D. AZAR & ASSOCIATES, P.C.
            By: */s/ Dylan C. Unger*
            Dylan C. Unger # 50099
            ATTORNEY FOR PLAINTIFF

**Plaintiff's Address:**
**Chad Sanford**
**19909 East Linvale Place**
**Aurora, CO 80013**

*In accordance with C.R.C.P. 121, §1-26(9), a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*

Appendix A-2